JEWELL FEATHERSTONE by HUBERT A. CURTIN, her Next Friend, Appellant, v. KANSAS CITY TERMINAL RAILWAY COMPANY, Respondent

Kansas City Court of Appeals, December 12, 1913.

1. NEGLIGENCE: Railroads: Trespassers.   The plaintiff, a minor, by her next friend, sued to recover damages for personal injuries sustained while picking up coal on the defendant's switch tracks.   The switch track in question ran through some land owned by a lumber company, a part of which was used by children as playgrounds although they were trespassers.   On the day of the accident the plaintiff was requested by a woman to go under a coal car and pick up a lump of coal.   While she was under the car, the defendant's employees backed in some cars on the same track, without warning, although they were accustomed to warn anybody that might be in the way, and struck the car she was under, causing it to run over and crush her left leg.   Held, that it makes no difference whether technically the plaintiff was a trespasser, a licensee, or an invitee, for she was at a place where the defendant's servants had every reason to expect her, or some other child to be.   Such knowledge was enough, of itself, to impose a duty on them to give her warning and a negligent breach of such duty resulting in injury would be actionable negligence.

2. ———— : ———— : ————.  Where a child is a trespasser on railroad property and is injured in a place where the company had no reason to anticipate her presence, there can be no liability to respond in damages imposed upon the company for the reason that no owner of property is bound to anticipate that his property rights will be invaded.  But where a railroad company suffers its property to be used by the public either for the purpose of travel, or of recreation, and knows that it is being so used, it becomes charged with the performance of a duty towards such users to exercise reasonable care to avoid injuring them.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED (*with directions*).

*Kimbrell & White* for appellant.

*S. W. Moore, S. W. Sawyer* and *Cyrus Crane* for respondent.

JOHNSON, J.—Plaintiff, a minor nine years of age, sues by her next friend to recover damages for personal injuries she alleges were caused by negligence of defendant.  The answer is a general denial and a plea of contributory negligence.  A trial in the circuit court resulted in a verdict for plaintiff in the sum of $7500, but on the hearing of a motion for a new trial the court set aside this verdict and granted a new trial on the ground of error "in refusing to give instructions offered by defendant and in refusing to sustain defendant's demurrer to the evidence offered at the close of all the evidence."  Plaintiff appealed from this judgment and contends that the cause was properly submitted to the jury.

The injury occurred in the afternoon of November 25, 1910, on a tract of land owned by a lumber company in Kansas City on the south side of defendant's railroad tracks.  The tract extended south from Twelfth street to Fifteenth street and was a block

wide, being bounded on the east by Elmwood avenue and on the west by Cypress avenue. A number of manufacturing and industrial concerns occupied a part of the tract as tenants of the lumber company and a spur railroad track owned by the lumber company connected these establishments with defendant's main line. This track ran from the main line in a southwesterly direction and then curved to the south and continued in a straight course through the middle of the tract to a point a few rods north of Fifteenth street where it ended. The track was used by defendant for switching and storing cars of freight received and forwarded by the tenants and other patrons of the lumber company. The south end of the property was vacant for a distance of 300 feet or more north of Fifteenth street and the track in this vacant block was used as an unloading track for cars of coal and other bulky freight. North of this place the track ran through an alley between the various manufacturing plants which, as stated, were tenants of the lumber company. Going out from defendant's main line the industrial track we have described ran down grade a short distance and thence on to the end on an increasing upgrade. At the south end the grade was so steep that cars set there for unloading were left with blocked wheels as well as with set brakes. Cars of coal and other freight were being almost constantly unloaded in the vacant block by patrons of the lumber company. These cars came in over the railroad of defendant and were switched to and from the end of the spur track by defendant's engines and train crews. Necessarily the cars had to be shoved in by the engines and whenever it became necessary to back into the end of the track with a string of cars, a brakeman was sent ahead to warn men at work in and about standing cars that the cars were about to be moved. Owing to the curve in the track and the narrowness of the alley this precaution was deemed essential to the protection of men en-

gaged in loading and unloading cars standing at various places along the track. West of Cypress avenue was a thickly settled residence district and the vacant lot had been used as a common playground by the numerous children of the neighborhood. They played there constantly on and about the track and frequently went in and under standing freight cars. They were not invited by the lumber company or defendant to make such use of the premises but were suffered to play about the track and, according to the evidence of plaintiff, were included in the warnings given by the brakeman sent ahead of approaching trains. Some of the housewives of the neighborhood and their children were in the habit of gleaning coal that fell from coal cars being unloaded and sometimes while following that humble pursuit, went between and under cars to pick up lumps that fell on the track. Plaintiff had lived in the vicinity a year and a half and, in common with other youthful denizens, had used the vacant lot as her playground and had become familiar with its customs and rules. She had played in and about standing cars and had often gone under cars to pick up coal at the request of some neighbor gleaner. Just before her injury she was playing "hide and go seek." There were four or five cars standing at the end of the track, among them two coal cars that were being unloaded. A woman not related to her was picking up coal that fell from one of the cars and asked her to go under the car for a lump that had fallen on the track. She ceased playing to comply with the request and crawled under the car. Before she could return a train backed in by defendant violently collided with the stationary cars and wheels of the car under which she had crawled ran over and crushed her left leg. No warning of any kind was given of the approach of the train to the men at work in the cars or to the children playing around them.

Defendant admits that it had always sent a brake-man ahead of each train to give warning but its wit-nesses say that no advance courier was sent in the present instance, for the reason that the disturbance of the cars at the end of the track was not intended but was due to an unavoidable accident; that it was not the purpose of the crew to shove this string of cars being handled by the engine into the vacant lot; that owing to the great weight of the load the engineer had been compelled to back in at high speed and that when he attempted to slow down to stop at the required place the train parted and the detached cars ran ahead into the standing cars. There are facts and circum-stances in evidence brought out by counsel for plain-tiff which tend to contradict this version of the injury and to show that the train was backed into the stand-ing cars intentionally for the purpose of taking away an unloaded car.

The only real questions in the case for our de-termination are those presented by defendant's demur-rer to the evidence and in the consideration of those questions we shall assume that the train was backed into the standing cars intentionally and without the observance by the train crew of defendant's usual cus-tom of giving warning of such movement.

There is a controversy in the evidence over the issue of whether these warnings were given also to children at play about the track. The trainmen say, in effect, that the custom was self-imposed, and not for the benefit of anyone except those working in and about the cars, but admit that when the advance brake-man observed children on and about the track, he or-dered them away and generally "was rocked" by the children for his pains. The evidence as a whole pre-sents the inference that the custom of giving warning was intended to be used and was used for the benefit of all persons found in the way of the advancing train and the controlling question in the case is whether or

not plaintiff in law was entitled to rely on the observance of the custom as a duty defendant had assumed towards her. The cause of action pleaded in the petition is grounded in negligence and negligence means a breach of duty. Consequently if it could not be said that defendant owed plaintiff a duty to be on the lookout for her and to give her warning, then it could not be said that her injury was caused by negligence of defendant. In approaching the question of plaintiff's status at the time of her injury, we dismiss as relatively unimportant the incident of her going under the car at the request of the woman who was picking up coal. Plaintiff's relation to defendant was not that of an uninvited but tolerated gleaner of coal, but was that of a young child at play on defendant's premises with the knowledge and implied consent of defendant. In their play the children went between and under the standing cars and any child of an obliging disposition would have turned aside from play a moment to comply with the request of an adult for a small service that would be as much play as work. The child was at play when injured and we pass to the question of whether she was in a place where the servants of defendant were required to anticipate she might be. The cases in this State which deal with various phases of the subject of children playing about railroad tracks are numerous and it would serve no useful purpose to review them. The general rule is that where a child is a trespasser on railroad property and is injured in a place where the company has no reason to anticipate its presence, there can be no liability to respond in damages imposed upon the company for the reason that no owner of property is bound to anticipate that his property rights will be invaded. But where a railroad company suffers its property to be used by the public either for the purpose of travel or of recreation and knows that it is being so used it becomes charged with the performance of a duty towards such users to exer-

cise reasonable care to avoid injuring them. As is said in Conley v. Railroad, 89 Ky. 402:

"Where one is injured as the result of a plain and manifest duty for the protection of human life or safety, the party thus causing the injury will not be heard to say in justification, that he was dealing with his own property and that the person injured was technically a trespasser."

It makes no difference whether, technically, plaintiff was a trespasser, a licensee or an invitee, her evidence shows she was at a place where defendant's servants had every reason to expect her, or some other child, to be. Such knowledge was enough, of itself, to impose a duty on them to give her warning and a negligent breach of such duty resulting in injury would be actionable negligence. To hold that defendant's servants, knowing that little children, in all reasonable probability, would be in and about the stationary cars, still owed them no duty of reasonable care, would be to declare a rule of conduct abhorrent to the most common instinct of humanity. The court did right in overruling the demurrer to the evidence and erred in granting a new trial.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff in accordance with the verdict.

All concur.

## ON MOTION FOR REHEARING.

We are asked by defendant to grant a rehearing and if this is not done to certify the cause to the Supreme Court on the ground that the foregoing opinion is in conflict with the following cases decided by the Supreme Court: Rushenberg v. Railroad, 109 Mo. 112; Burney v. Railroad, 126 Mo. 372; Ostertag v. Railroad, 64 Mo. 421; Kelly v. Benas, 217 Mo. 1.

These decisions were considered in the preparation of our opinion, and we thought, and still think, their doctrine is not inconsistent with the view that the peculiar and differentiating facts and circumstances of the instant case presented issues for the triers of fact to determine. The rule that circumstances alter cases obtains in jurisprudence as well as in ethics and its proper application in comparing the cases cited by defendant with the case in hand discloses striking and, we think, vital dissimilarities.

The motions for rehearing and to certify are overruled. All concur.